BENJAMIN B. WAGNER
United States Attorney
DAVID T. SHELLEDY
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
(916) 554-2799

Attorneys for the U.S. Department of the Interior, Bureau of Land Management,
U.S. Department of Agriculture, Forest Service

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIT RIVER TRIBE; *et al.*, | CONSOLIDATED CASES: |
| Plaintiffs, | NO. 2:04-CV-0956-JAM-JFM |
|  | NO. 2:04-CV-0969-JAM-JFM |
| v. |  |
| BUREAU OF LAND MANAGEMENT; *et al.*, | ORDER |
| Defendants. |  |

    The federal agencies submit this proposed order pursuant to the Court's instructions during the hearing on July 10, 2013.  In addition, the agencies respectfully suggest that the order be designated for publication.  Other courts may find the order helpful, especially the analysis of *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, __ U.S. __, 132 S. Ct. 2199 (2012).

    Counsel for defendant Calpine Corporation has authorized the undersigned to state that Calpine joins the proposed order.  The undersigned attempted without success to obtain plaintiffs' approval as to form.  Their counsel responded that she is in a location where she is unable to download the proposed order for review and so is not in a position to agree or disagree as to form.  Initially, she proposed to request an extension of time for filing of the proposed order; but in her last email, she advised the undersigned to go ahead with this filing.

Dated:  July 24, 2013                                Respectfully submitted,

                                                                      BENJAMIN B. WAGNER
                                                                      United States Attorney

                                                                     */s/ David T. Shelledy*
                                                                      DAVID T. SHELLEDY
                                                                      Assistant U.S. Attorney

**ORDER**

This matter came before the Court on July 10, 2013 for hearing on the federal agency defendants' motion for partial judgment on the pleadings and for partial summary judgment and on Calpine's motion for partial judgment on the pleadings or for partial summary judgment. Deborah A. Sivas appeared on behalf of plaintiffs. Assistant U.S. Attorney David T. Shelledy appeared on behalf of defendants U.S. Department of the Interior, Bureau of Land Management ("BLM"), U.S. Department of Agriculture, and the Forest Service. Craig D. Galli appeared on behalf of defendant Calpine Corporation.

In a First Amended Complaint filed on March 8, 2013, plaintiffs challenge a decision by the Bureau of Land Management ("BLM") in May 1998 announcing that twenty-six federal geothermal leases on the Klamath and Modoc National Forests were entitled to continuation for up to forty years. Plaintiffs claim that the lease continuation violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the National Historic Preservation Act ("NHPA"), 16 U.S.C. § 470 *et seq.*, the Geothermal Steam Act, 30 U.S.C. §§ 1001 *et seq.*, and the government's fiduciary duty to the Pit River Tribe. In addition, plaintiff Mount Shasta Bioregional Ecology Center ("MSBEC") asserts a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*: specifically, that BLM and the Department of the Interior failed to issue a complete decision on a request for certain documents submitted by MSBEC in May 2003.

Defendant Calpine joins the motion filed by the federal agencies. In addition, Calpine's counsel explained at the hearing that Calpine's own motion which included alternative grounds for relief need not be decided if the Court grants the motion filed by the agencies. By this order, the Court grants the motion filed by the agencies, grants judgment on the pleadings for all defendants on the First, Second, Third, and Fourth Causes of Action, and grants summary judgment in favor of the Department of the Interior and BLM on the Fifth Cause of Action. Accordingly, the motion filed by Calpine is moot and will not be decided.

**BACKGROUND**

The following discussion is solely to provide context for the claims asserted by the plaintiffs. As explained below, on all claims except FOIA, the Court's decision is based solely on the applicable law and the factual allegations of the First Amended Complaint.

The Geothermal Steam Act authorizes the Secretary of the Interior to lease federal lands for geothermal power development. *Sierra Club v. Hathaway*, 579 F.2d 1162, 1164 (9th Cir. 1978). A lessee is entitled to use so much of the surface of the land covered by the geothermal lease as necessary for production, utilization, and conservation of geothermal resources. 30 U.S.C. § 1013 (1998); 43 C.F.R. § 3200.0.6 (1997). The statute has been amended multiple times since its original enactment in 1970. The claims in this case are governed by the statute as codified in the 1998 edition of the United States Code and BLM regulations set forth in the 1997 edition of the Code of Federal Regulations.[1] All citations are to those editions unless otherwise noted.

The statute and implementing regulations authorize BLM to issue leases for geothermal exploration and development on National Forest lands with consent from USDA. 30 U.S.C. § 1014; 43 C.F.R. § 3201.1-3. Geothermal leases have a primary term of ten years. 30 U.S.C. § 1005; 43 C.F.R. § 33203.1-2. As of 1998, a lease would continue for up to forty years beyond the primary term if the lessee was producing or using the geothermal resource, or had drilled a well capable of production in commercial quantities and was making diligent efforts toward commercial production or utilization, as determined by BLM. 30 U.S.C. § 1005(a); 43 C.F.R. § 3202.1-3. Commercial production is defined as including "completion of a well capable of producing geothermal steam in commercial quantities so long as the Secretary determines that diligent efforts are being made toward the utilization of the geothermal steam." *Id.* § 1005(d); 43 C.F.R. § 3200.0-5(x). If the requirements for continuation were not satisfied, the primary term could be extended for five years based on (a) diligent efforts and commencement of drilling during the primary term, or (b) bona fide efforts and payments in lieu of commercial production. 43 C.F.R. §1005(c)-(i). The statute and regulations also authorize BLM to approve operation of multiple leases under a unit plan for exploration and development of a common

---

[1] The 1998 edition of the Code of Federal Regulations reflects amendments made in September 1998, after the administrative decision challenged in this case, and therefore is inapplicable.

Proposed Order 3

geothermal resource pool or field, whenever BLM determined this to be in the public interest. 30 U.S.C. § 1017; 43 C.F.R. § 3280.0-2. For at least some purposes, leases committed to a geothermal unit benefit from drilling and commercial production or bona fide efforts on other leases committed to the same unit. *See* 30 U.S.C. § 1005(c), (g); 43 C.F.R. § 3286.1 Art. 17.3-17.4.

With consent from the Forest Service, BLM issued the leases in this case between 1982 and 1988. 1st Amend. Compl. ¶¶ 32, 34, 39. Also in the 1980s, BLM approved the Glass Mountain Unit Agreement and commitment of twenty-seven leases to the Unit. In 1989, BLM issued what the parties refer to as "the paying well determination" – *i.e.,* a determination that one of the leases had a well capable of commercial production. In July 1991, BLM issued a decision (a) recognizing that the lease with the paying well was entitled to continuation for up to forty years, and (b) granting five-year extensions to other leases committed to the Glass Mountain Unit. Five-year extensions were granted for two additional leases in March 1992. Record Excerpts ("RE") at 27-31.

Six years later, on May 18, 1998, BLM concluded that instead of five-year extensions, all leases committed to the Glass Mountain Unit should have received lease continuations based on the paying-well determination made in 1989. Accordingly, BLM announced that the twenty-six leases committed to the Glass Mountain Unit that had not already received a continuation were "granted an additional term, effective February 13, 1989" (the date of the paying well determination), which would continue for up to forty years after the end of the primary term, so long as the unit operator or lessee submitted an annual report describing diligent efforts. RE 57-59. The same day, BLM announced that the five-year extensions previously granted in error were rescinded. RE 60-61.

In 1997, the Glass Mountain Unit operator submitted a plan of operation for some of the leases in issue here, proposing to construct a power plant and related facilities called the "Telephone Flat Geothermal Development Project." 1st Amend. Compl. ¶ 80. BLM and the Forest Service prepared a joint environmental impact statement on the proposal (*id.* ¶ 82) and subsequently approved the project. *Id.* ¶ 91. However, last year, in response to a request from Calpine, the agencies withdrew their Telephone Flat Project approvals, and all permits and licenses issued pursuant to the approvals, for further environmental analysis and tribal consultation in light of *Pit River Tribe v. U.S. Forest Service,* 469 F.3d 768 (9th Cir. 2006) ("*Pit River I*"), which adjudicated environmental claims pertaining to

Proposed Order                                    4

1  geothermal leases other than the ones in this case.  1st Amend. Compl. ¶ 97.  That action rendered moot
2  some of the claims previously asserted in this case and resulted in a stipulation and order for the filing of
3  an amended complaint challenging only the May 18, 1998 lease continuation.  Stipulation and Order
4  filed March 8, 2013 (Dkt. 45).

## JUDGMENT ON THE PLEADINGS

Under Rule 12(c), Fed. R. Civ. P., "[j]udgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (punctuation omitted, quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).  The analysis is "substantially identical" to that for a motion to dismiss for failure to state a claim:  the Court "must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Id.*  In considering a Rule 12(c) motion, the court must generally limit its review to the pleadings themselves.  *Yakima Valley Mem'l Hosp. v. Washington State Dept. of Health*, 654 F.3d 919, 925 (9th Cir. 2011).  Documents attached to the complaint and incorporated by reference are treated as part of the complaint, not extrinsic evidence, and, thus, may be considered in a Rule 12(c) motion.  *Id.*  When a defendant is the moving party, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989).  Assertions that are mere legal conclusions or unwarranted inferences, however, are not entitled to the assumption of truth.  *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir.1996).

## FIRST CAUSE OF ACTION:  GEOTHERMAL STEAM ACT

Plaintiffs' primary claim is that the May 1998 lease continuation violated the Geothermal Steam Act.[2]  At that time, the only provisions of the statute addressing lease continuation read as follows:

---

[2] Paragraphs 107 (a), (b), (c), and (e) of the First Amended Complaint assert that BLM previously failed to take various actions required by the Geothermal Steam Act.  However, plaintiffs waived those claims both during the hearing and in their filings.  During the hearing, plaintiffs explained that those paragraphs are alleged only as facts supporting their claim that the May 18, 1998 lease continuation was unlawful, and acknowledged that the statute of limitations precludes relief for those allegations as violations of the Geothermal Steam Act in their own right.

Proposed Order                     5

> If geothermal steam is produced or utilized in commercial quantities within [the primary] term, *such lease shall continue* for so long thereafter as geothermal steam is produced or utilized in commercial quantities, but such continuation shall not exceed an additional forty years.
>
> \* \* \*
>
> Except as otherwise provided for in this section, for purposes of this section the term "produced or utilized in commercial quantities" means the completion of a well producing geothermal steam in commercial quantities. Such term shall also include the completion of a well capable of producing geothermal steam in commercial quantities so long as the Secretary determines that diligent efforts are being made toward the utilization of the geothermal steam.

30 U.S.C. § 1005(a) & (d).

Plaintiffs argue that, when considering lease continuation, BLM could not properly deem all leases committed the Glass Mountain Unit to be capable of commercial production based on the agency's prior determination that one lease committed to the unit was capable of commercial production. As plaintiffs interpret 30 U.S.C. § 1005, each lease must be proved capable of commercial production on its own. The defendants argue that this claim is not justiciable, because plaintiffs lack prudential standing to assert any claim under the lease-continuation provision. The Court agrees and holds that plaintiffs lack standing to assert this claim.

The Geothermal Steam Act does not provide for a private right of action. Therefore, to bring suit to vindicate the statute's requirements, a plaintiff must rely on the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.,* that confer "standing to an 'aggrieved party' within the meaning of the substantive statute upon which the claim is based." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agric.*, 415 F.3d 1078, 1102 (9th Cir. 2005) (quoting 5 U.S.C. § 702). This section of the APA requires that "[a] plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S. Ct. 1154 (1997).

The zone of interest test is not meant to be especially demanding. Prudential standing is satisfied unless "the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Bennett,* 520 U.S. at 162, 117 S. Ct. 1154; *accord Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S. Ct. 827 (1970); *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n.*, 457 F.3d 941, 950 (9th Cir. 2006). There need be no indication of congressional purpose to benefit a would-be plaintiff.

As alleged in the First Amended Complaint, plaintiffs all share a common interest in preventing geothermal leasing or development, because they consider it inconsistent with their environmental, recreational, cultural and spiritual uses of the land. Thus, as the core of their standing allegations, all plaintiffs allege that "[t]he exploration and development of geothermal leases will interfere with [their enjoyment of] Medicine Lake and the Highlands." 1st Amend. Compl. ¶¶ 8-12. They argue that their environmental interests satisfy the zone-of-interest test because several sections of the Geothermal Steam Act direct BLM to address environmental concerns in its decision making. That argument focuses too generally on the interests they claim are protected by the statute as a whole.

The Supreme Court has ruled at least four times that where, as here, jurisdiction is founded on the APA, "the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[3] The Court made this point emphatically in its unanimous decision in *Bennett v. Spear:*

> Whether a plaintiff's interest is "arguably . . . protected . . . by the statute" within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . , but by reference to the particular provision of law upon which the plaintiff relies. . . . As we said with the utmost clarity in *National Wildlife Federation,* "the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint.*"

520 U.S. at 175-76, 117 S. Ct. at 1167 (emphasis in original). *See also Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 492, 118 S. Ct. 927, 935 (1998) ("we first discern the interests 'arguably . . . to be protected' by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in question are among them."). Under these binding decisions, plaintiffs' burden is to show that their environmental interests are arguably protected or regulated by the lease-continuation provision of the Geothermal Steam Act – the provision they claim was violated. Other provisions of the Geothermal Steam Act are only pertinent if they show the lease continuation provision protects (or does not protect) their interests.

---

[3] *Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 494, 118 S. Ct. 927, 936 (1998); *Bennett v. Spear*, 520 U.S. 154, 176, 117 S. Ct. 1154, 1167 (1997); *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523-24, 111 S. Ct. 913, 918 (1991); *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883, 110 S. Ct. 3177, 3186 (1990).

Thus, standing cannot be conferred by the inapplicable provisions of the Geothermal Steam Act on which plaintiffs rely. *See* Plf. Mem. Opp. at 16 (citing 30 U.S.C. §§ 1014, 1027, 1016, 1023). Sections 1014 and 1027 provide that geothermal leases shall not be "issued" for certain classes of lands (including lands held in trust for Indian tribes) that are not -- and that plaintiffs do not allege to be -- involved in this case. Moreover, both sections address only *issuance* of new leases and say nothing about *continuation* of existing leases. Section 1023 states only that the Secretary shall promulgate rules and regulations which may provide for prevention of waste and protection of the public interest. The Secretary has issued such regulations; plaintiffs do not contend otherwise. Section 1016 only states that administration of the geothermal leasing program shall be under principles of multiple use of lands and resources, and requires, to the extent practicable, that geothermal leases allow for coexistence of mineral leases. None of those statutory provisions allow BLM, contrary to the express mandate of Section 1005, to deny lease continuation in order to protect plaintiffs' environmental concerns.

Nor does it advance plaintiffs' argument to assert that "consideration of environmental impacts and other public land uses is integral to [the agency's] implementation of the Geothermal Steam Act." Plf. Mem. Opp. at 14. Plaintiffs have only shown that BLM considers environmental impacts when it makes significant *discretionary* decisions under the statute, like whether to issue *new* geothermal leases or to approve development projects. But decisions of that sort are not challenged here. Having abandoned all claims challenging acts or omissions other than lease continuation, plaintiffs' burden is to show that their anti-development interests are within the zone of interests protected by Section 1005(a). Plaintiffs have not made that showing.

In support of their more general focus, plaintiffs rely on *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, __ U.S. __, 132 S. Ct. 2199 (2012). It is unclear whether *Patchak* represents a departure from the Supreme Court's prior teaching that the zone-of-interest test focuses on the particular statutory provision in issue. The opinion does not include the language quoted above from *Bennett* and the other cases. Nonetheless, this Court is persuaded that *Patchak* is not such a dramatic change of law. If the Supreme Court intended to abrogate the clear, unanimous instruction in *Bennett* and the other decisions quoted above, it surely would have said so.

1    In any event, *Patchak* can be reconciled with *Bennett* and the other cases, and it supports the
2 defendants' position in the circumstances of this case.  In *Patchak*, the Court rejected the narrow
3 argument that a federal statute authorizing the Secretary of the Interior to acquire property for Indian
4 tribes did not confer standing on a neighboring landowner who objected to the tribe's intended use of the
5 property.  The Court rejected that argument because the implementing regulations "ma[d]e th[e]
6 statutory concern with land use crystal clear," by "requir[ing] the Secretary to consider, in evaluating
7 any acquisition, both '[t]he purposes for which the land will be used' and the 'potential conflicts of land
8 use which may arise.'"  *Id*. at 2211.  Thus, unlike this case, the zone-of-interest test was satisfied
9 because the applicable statute and regulation specifically required consideration of the competing
10 interests asserted by the plaintiff.

11    The statute and regulations applicable here do just the opposite: Title 30 U.S.C. § 1005(a) and 43
12 C.F.R. § 3203.1-3 do not permit, much less require, consideration of environmental concerns or
13 competing land uses when BLM acts on continuation of an existing lease.  Both state in simple terms
14 that a lease "shall continue" if geothermal steam is produced or utilized in commercial quantities.
15 Neither the statute nor the regulation leaves any discretion for BLM to consider plaintiffs' interests
16 when acting on lease continuation.

17    *Patchak* is also readily distinguishable because plaintiffs' interest in preventing geothermal
18 development is inconsistent with the manifest purpose of the lease-continuation provision -- to
19 encourage and reward commercial development by offering an automatic continuation if geothermal
20 steam is produced or utilized during the primary term.  Under *Patchak,* that fact compels judgment for
21 defendants, because the Court reaffirmed that the prudential standing doctrine forecloses suit "when a
22 plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute
23 that it cannot reasonably be assumed that Congress intended to permit the suit.'"  132 S. Ct. at 2210
24 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 757 (1987)).

25    For all these reasons, the Court finds on the First Cause of Action that plaintiffs do not have
26 prudential standing, and grants judgment on the pleadings in favor of all defendants on that basis.

27
28

Proposed Order                                    9

## SECOND, THIRD AND FOURTH CAUSES OF ACTION:

## NEPA, NHPA, AND FIDUCIARY DUTY

As their Second, Third, and Fourth Causes of Action, plaintiffs claim that the May 18, 1998 lease continuation violated NEPA, the NHPA, and the government's fiduciary duty to the Pit River Tribe, because BLM did not prepare an environmental impact statement, did not adequately consider historic and culturally significant properties, and did not engage in adequate consultation with the Tribe. The defendants do not challenge the plaintiffs' standing to assert these claims. Instead, they seek judgment on the pleadings on grounds that NEPA, the NHPA, and fiduciary duty do not apply.

As an initial matter, plaintiffs did not substantively respond to the motion for judgment on the pleadings on these claims. Their memorandum in opposition only asserted that they need more time to review a supplement to the administrative record filed on May 15, 2013. Allowing more time for review of those documents could not affect these motions, because on a motion for judgment on the pleadings, the Court accepts the factual allegations of the complaint as true and resolves any factual disputes in plaintiffs' favor. Extrinsic documents not referenced in the complaint are not considered on a motion of this type. As explained below, the dispositive issue is whether lease continuation is mandatory or discretionary under the Geothermal Steam Act. That is a question of law, not fact, and no document in the supplementary record could change the answer.

Turning to the merits, NEPA requires an agency to prepare an environmental impact statement on proposals for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332. However, when environmental considerations cannot alter an agency decision, such analysis would be superfluous, and NEPA compliance is not required. In *Sierra Club v. Babbitt*, 65 F.3d 1502 (9th Cir. 1995), the Ninth Circuit squarely held that NEPA is only "triggered by a *discretionary* federal action," and conversely, nondiscretionary actions are "excused . . . from the operation of NEPA." *Id.* at 1512 (emphasis added). Following *Babbitt*, the D.C. Circuit explained:

> The touchstone of whether NEPA applies is discretion. The twofold purpose of NEPA is to inject environmental considerations into the federal agency's decisionmaking process and to inform the public that the federal agency has considered environmental concerns in its decisionmaking process. Such information may cause the agency to modify its proposed action. If, however, the agency does not have sufficient discretion to affect the outcome of its actions, and its role is merely ministerial, the information that NEPA provides can have no effect on the agency's actions, and therefore NEPA is inapplicable.

*Citizens Against Rails-to-Trails v. Surface Transp. Bd.,* 267 F.3d 1144, 1151 (D.C. Cir. 2001) (internal quotations and citations omitted).[4]

*Babbitt* is closely analogous to this case.  The Ninth Circuit held that BLM was not required to prepare an environmental impact statement before approving construction of a logging road across federal land, even though the project could affect the threatened spotted owl.  Under a prior easement agreement, BLM could only deny approval based on three specific criteria: (1) if the proposed route was not the most direct, (2) if it would substantially interfere with existing or planned facilities, and (3) if it would result in excessive soil erosion.  65 F.3d at 1505-06, 1512.  The court reasoned that there would be "no benefit from NEPA compliance," since none of the conditions allowing BLM to deny approval were related to protecting the spotted owl or its habitat.  *Id.* at 1512.  Because BLM had no discretion to deny approval based on general environmental concerns, the court concluded that NEPA's requirements "do not apply to this case."  *Id.* at 1513.

Likewise, here, the simple terms of Section 1005(a) required BLM to continue the leases if two non-environmental conditions were met:   (1) there was a well capable of commercial production, and (2) the operator made diligent efforts toward utilization of the resource.  Thus, as in *Babbitt,* BLM had no discretion to deny continuation based on environmental concerns.  Because continuation of the leases was required by law irrespective of environmental effects, environmental analysis under NEPA would have been superfluous and was not required.[5]

---

[4] *Cf. Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 769, 124 S. Ct. 2204, 2216 (2004) ("It would not . . . satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform."); *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662, 127 S. Ct. 2518, 2532 (2007) (holding that an agency's no-jeopardy duty under the Endangered Species Act "covers only discretionary agency actions and does not attach to actions . . . that an agency is *required* by statute to undertake once certain specified triggering events have occurred.").

[5] *See, e.g., Sac & Fox Nation of Missouri v. Norton,* 240 F.3d 1250, 1262-63 (10th Cir. 2001) ("because the Secretary exercised no discretion in acquiring the Shriner Tract, he reasonably concluded that NEPA or NHPA analysis would have been pointless, since neither could have had any impact on the acquisition"); *Sugarloaf Citizens Ass'n v. FERC*, 959 F.2d 508, 513 (4th Cir.1992) ("Other Circuits have held that when an agency has no discretion to consider environmental values implementing a statutory requirement, its actions are ministerial and not subject to NEPA."); *Goos v. ICC,* 911 F.2d 1283, 1296 (8th Cir.1990) ("Because the ICC has not been granted any discretion under section 1247(d) to base its issuance of an NITU or CITU on environmental consequences, we agree that it would make little sense to force the ICC to consider factors which cannot affect its decision."); *Milo Cmty. Hosp. v. Weinberger,* (cont'd…)

Proposed Order 11

Plaintiffs argued during the hearing that NEPA would apply if the Court found that the statutory criteria for lease continuation were not met. But as explained above, plaintiffs lack standing to claim that the Geothermal Steam Act was violated. Equally important, if plaintiffs could show that the statutory criteria for lease continuation were not met, lease continuation still would not be discretionary, as required to trigger NEPA. Instead, there would be no statutory authority for continuation, irrespective of environmental concerns. Thus, under 30 U.S.C. § 1005(a), lease continuation is never discretionary; it is always either mandatory or unavailable, depending on non-environmental criteria. Therefore, environmental analysis cannot be required.

Plaintiffs argue that the Ninth Circuit's decision in *Pit River I* compels the conclusion that NEPA is applicable here. The Court finds that argument unpersuasive. In fact, *Pit River I* compels the conclusion that NEPA does not apply. In *Pit River I,* the court applied NEPA to a BLM decision granting a five-year lease extension under the 1998 version of 30 U.S.C. § 1005(g). Unlike the lease continuation provision applicable here, the lease extension provision in *Pit River I* stated that BLM "may" grant a lease extension in specified circumstances. However, Congress later amended Section 1005(g) to state that BLM "shall" grant a lease extension in the specified circumstances. The Ninth Circuit recognized that NEPA would not be applicable under the amended statute:

> By changing "may" to "shall," the statute eliminated the Bureau's discretion in extending geothermal leases, provided that certain conditions are met by the lessees" and, therefore, NEPA would not apply to extensions granted under the amended statute. NEPA's EIS requirements apply only to discretionary federal decisions. *See Dep't of Transp. V. Pub. Citizen*, 541 U.S. 752, 768, 124 S. Ct. 2204, 159 L.Ed.2d 60 (2004). Accordingly, if the statute's effect is retroactive, effective relief to Pit River would be foreclosed.

469 F.3d at 780.

The lease continuation provision applicable in this case, 30 U.S.C. § 1005(a), has used the word "shall" ever since its original enactment. *See* Geothermal Steam Act of 1970, Pub. L. 91-581, 84 Stat. 1566 § 6 (Dec. 24, 1970). Therefore, under the teaching of *Pit River I,* lease continuations are mandatory, not discretionary, and NEPA does not apply.

---

(…cont'd)
525 F.2d 144, 147 (1st Cir.1975) (finding that no EIS was necessary where "consideration of the factors that the appellant has characterized as 'environmental considerations' could not have changed the Secretary's decision).

Proposed Order 12

The same is true of plaintiffs' claims under the NHPA.  The NHPA requires federal agencies to take into account the impact of any "Federal or federally assisted undertaking" on sites listed or eligible for listing in the National Register of Historic Places, to consult with Indian tribes concerning their particular historic properties, and to provide the Advisory Council on Historic Preservation a reasonable opportunity to comment.  16 U.S.C. §§ 470a, 470f.  Just as NEPA does not apply when there can be "no benefit from NEPA compliance," analysis and consultation under the NHPA are not required when a mandatory statutory duty would make them superfluous.  In *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1262-63 (10th Cir. 2001), the court held that "no NEPA or NHPA analysis was required" before the Secretary of the Interior took a tract of land into trust.  *Id.* at 1262-63.  "NEPA or NHPA analysis would have been pointless," the court explained, because the Secretary had no discretion but to make the land acquisition under federal law.  Likewise, here, because lease continuation was mandatory, not discretionary, the NHPA does not apply.

The same is also true of plaintiffs' fiduciary duty claim.  Specific fiduciary duties arise when the United States manages Indian property – which is not in issue here -- pursuant to standards prescribed in federal statutes and regulations. *United States v. Mitchell*, 463 U.S. 206, 209, 217-218, 220-25 (1983); *United States v. Mitchell*, 445 U.S. 535, 541-543, 545-46 (1980); *Inter Tribal Council v. Babbitt*, 51 F.3d 199, 203 (9th Cir. 1995).  Beyond that, the United States owes a general trust responsibility to all federally recognized Indian tribes. *Id.*  The general trust responsibility "is discharged by the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes." *Okanogan Highlands Alliance v. Williams*, 236 F.3d 468, 479 (9th Cir. 2000) (internal quotation marks omitted); *accord Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 573 (9th Cir.1998).  Where a tribe asserts the applicability of a more demanding fiduciary duty, "the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *United States v. Navajo Nation*, 537 U.S. 488, 506, 123 S. Ct. 1079, 1091 (2003).

There are no rights-creating or duty-imposing statutory or regulatory prescriptions that could require BLM to deny a lease continuation that was mandatory under the Geothermal Steam Act, or give BLM discretion to do so.  Because the Geothermal Steam Act mandated lease continuation if its non-environmental criteria were satisfied, consultation with the tribe or special consideration of its interests

Proposed Order                                13

could not have changed the decision. Therefore, consultation was not required, and any failure of consultation could not provide a basis to overturn BLM's action.[6]

### FIFTH CAUSE OF ACTION: FOIA

As the Fifth Cause of Action, plaintiff MSBEC claims that BLM and the Interior Department violated FOIA when they failed to provide a complete response to a FOIA request submitted to BLM in May 2003. The claim was not asserted in the complaints that initiated this case in 2004. Instead, plaintiffs first asserted it in the First Amended Complaint filed in March 2013. The Department of the Interior and BLM move for summary judgment on this claim on grounds that it is barred by the general statute of limitations for claims against the United States, 28 U.S.C. § 2401(a). The Court agrees, and grants summary judgment on that basis.

Rule 56, Fed. R. Civ. P., provides that a party may move for summary judgment on any claim, defense, or part of any claim of defense, and the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The party opposing summary judgment must show: (a) that a factual dispute is "genuine" in the sense that the evidence on file could support a reasonable finding in his favor, and (b) that the dispute is "material" in the sense that it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 251-52, 106 S. Ct. 2505, 2510-12 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986). If one or more undisputed facts defeat the plaintiff's claim, all other facts are "necessarily . . . immaterial," and summary judgment should be entered for the defendant. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

The material facts are undisputed:

MSBEC made two FOIA requests related to geothermal leases – one dated May 22, 2003, and another dated November 10, 2003. The FOIA claim in this case concerns the request dated May 22, 2003. That request sought "all documentation associated with the Telephone Flat Development Project

---

[6] On page 40 of the hearing transcript for this motion, where the transcript says "So I *won't* grant the 12(c) motion with respect to those claims," it should read, "So I *will* grant the 12(c) motion with respect to those claims."

Proposed Order 14

1  Sundry Notices," including notices for acidization for various geothermal wells, and "applications [and]
2  permit approvals for the Telephone Flat Development Project and the Fourmile Hill Development
3  Project power plant."

4  BLM responded with a partial grant and partial denial of the request on August 6, 2003. As
5  explained in the response, BLM identified seventy-nine pages of responsive documents; produced fifty-
6  nine pages after making redactions to sixteen; and withheld twenty pages under FOIA Exemptions 4 and
7  9, citing the confidential or proprietary nature of geologic and geophysical information, trade secrets,
8  and other commercial or financial information in the documents. The response letter explained that
9  "such information may only be released with the consent of the lessee," and that the lessee objected to
10 release.

11 MSBEC filed an administrative appeal with the Interior Department's Office of Information
12 Resources Management ("OIRM") on September 2, 2003. On September 30, 2003, OIRM issued a
13 letter to MSBEC acknowledging the administrative appeal and stating that the issues it raised were
14 under review. The letter said the Interior Department "hopes . . . you will defer action until a
15 substantive decision has been reached," but it also stated: "You have a right to treat the delay in
16 responding to [issues raised in the appeal] as a final denial of your request and to seek judicial review[.]"

17 On December 1, 2003, BLM issued a supplementary response to MSBEC's appeal. The
18 supplementary response explained that seven previously unreleased pages of records on acidization had
19 been identified; one of those pages was being withheld in its entirety; and two were being redacted prior
20 to release pursuant to FOIA Exemptions 4 and 9, citing proprietary, commercial, financial, and trade-
21 secret information in the documents.

22 On December 28, 2003, MSBEC filed a second administrative appeal with OIRM, concerning
23 BLM's supplementary response. OIRM issued a letter on the second administrative appeal on January
24 30, 2004. It stated that, with respect to one issue raised in the appeal, BLM had already produced all
25 responsive documents. With respect to another issue raised in the appeal, the January 30 letter stated
26 that the issue was still under review. Once again, the letter said the Department "hopes . . . you will
27 defer action until a substantive decision has been reached," but specifically notified MSBEC that it
28

Proposed Order                                    15

1  "ha[d] a right to treat the delay in responding . . . as a final denial of your request and to seek judicial
2  review[.]"

3  Thereafter, MSBEC delayed seeking judicial review for more than nine years. It asserted a
4  FOIA claim for the first time in the First Amended Complaint filed on March 8, 2013.

5  FOIA claims are subject to the six-year-limitations period imposed by 28 U.S.C. § 2401(a).
6  *Spannaus v. U.S. Dept. of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *Rosenfeld v. U.S. Department of*
7  *Justice,* 208 W.L. 3925633 at *10 (N.D. Cal. 2008). The cause of action accrues "as soon as the
8  requesting party can institute and maintain an action in court." *Spannaus* 824 F.2d at 56; *Rosenfeld* at
9  *10. Because FOIA requires exhaustion of administrative remedies before initiation of suit, FOIA
10 claims accrue as soon as administrative remedies are exhausted -- either actually exhausted by a final
11 denial of the request, or constructively exhausted by expiration of a time limit FOIA imposes on an
12 agency response. *Spannaus* 824 F.2d at 56; *Rosenfeld* at *10. One such limit is that FOIA allows only
13 twenty business days for an agency to decide an administrative appeal. 5 U.S.C. § 552 (a)(6)(A)(ii). If
14 the requesting party fails to assert a judicial claim within six years after actual or constructive
15 exhaustion, the claim is barred. In both *Spannaus* and *Rosenfeld,* the courts held that FOIA claims were
16 barred where the requesting party failed to assert a judicial claim within six years after an agency failed
17 to act on a request within a time limit imposed by FOIA.

18 In this case, MSBEC's claim accrued at the latest on January 30, 2004, when OIRM issued its
19 response to MSBEC's last appeal. The limitations period expired six years later, at the end of January
20 2010. Plaintiffs did not assert their FOIA claim until they filed the First Amended Complaint on March
21 6, 2013 – more than three years too late. Therefore, the claim is barred.

22 The FOIA claim does not relate back to the filing date of the original complaints. Under Rule
23 15, Fed. R. Civ. P, a new claim added by amendment relates back only if the claim "arose out of the
24 conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(2). As the
25 Supreme Court has emphasized, this rule "relaxes, but does not obliterate, the statute of limitations,"
26 because "relation back depends on the existence of a common 'core of operative facts' uniting the
27 original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659, 125 S. Ct. 2562, 2572 (2005).
28 The Ninth Circuit defines the terms "transaction" or "occurrence" to mean similarity in the factual

background of a claim. Claims that arise out of a systematic pattern of events arise from the same transaction or occurrence.

The policies underlying the statute of limitations are implicated in the relation-back analysis. An amendment of a complaint relates back only if the original pleading put the defendant on notice of the particular transaction or set of facts that the plaintiff believes to have caused the complained-of injury. Thus, in *Sierra Club v. Penfold,* 857 F.2d 1307 (9th Cir. 1988), for example, the Ninth Circuit held that an amendment challenging BLM's "conduct in *adopting* [a] regulatio[n]" did not relate back to filing of the original complaint, which challenged the manner in which the agency *applied* the regulation, because the complaint did not give "notice of the substance of what was sought to be added by the amendment." *Id.* at 1315-16 (emphasis added).

The only conduct, transactions, and occurrences alleged in the original complaints were actions by BLM and the Forest Service on geothermal leases and development proposals, all of which preceded MSBEC's FOIA request. The FOIA claim does not arise from those actions; it arises solely from the Interior Department's response to a request for documents that was not even mentioned in the original complaints. Because the original complaints did not assert any claim based on the withholding of documents requested by MSBEC, the complaints did not give notice of the substance of the new claim. Therefore, the amendment does not relate back.

MSBEC argues that even if a requester's claim normally accrues with the expiration of the administrative appeal response period -- in this case, that would be January 2004 -- equitable tolling should apply here, because the agency led MSBEC to believe that the agency was diligently considering the issue and that it could either elect to treat the January 30th letter as the denial or defer legal action until a substantive decision was reached on the appeal. MSBEC also argues that it has been diligently pursuing this claim by bringing this lawsuit and expected the documents to be produced as part of the administrative record.

For equitable tolling to apply, the Ninth Circuit requires that "despite all due diligence, the [plaintiff was] unable to obtain vital information bearing on the existence of the claim." *Valeriano v. Gonzales,* 474 F.3d 669, 673 (9th Cir. 2007) (quoting *Socop-Gonzalez v. INS,* 272 F.3d 1176, 1985 (9th

1  Cir. 2001)).  In addition, "[t]he party's ignorance of the necessary information must have been "caused
2  by circumstances beyond the party's control."  *Id.*  Those requirements are not met here.

3        MSBEC did not lack any information bearing on the existence of its claim, because the Interior
4  Department effectively told MSBEC that it had a perfected FOIA claim.  The denial letters sent on
5  September 30, 2003, and January 30, 2004, expressly state that MSBEC "ha[d] the right to treat the
6  delay in responding [further] . . . as a final denial of [its] request and to seek judicial review."

7        MSBEC's expectation that it would receive the documents it wanted through the administrative
8  record in this case is without legal significance.  The administrative record was lodged in March 2005
9  (Dkt. 24).  Evidently, it did not contain what MSBEC wanted; yet MSBEC still waited another eight
10 years before asserting the FOIA claim.  MSBEC's expectation that it would receive the documents
11 through the administrative record is not evidence that despite all due diligence, it was unable to obtain
12 vital information bearing on the existence of its claim.  In addition, MSBEC has presented no evidence
13 that some extraordinary circumstance stood in its way.  Therefore, as a matter of law, equitable tolling
14 does not apply.

15       MSBEC also argues for equitable estoppel.  That principle of law focuses primarily on the
16 actions taken by defendants.  It requires the Court to determine whether the defendant actively took
17 steps that prevented the plaintiff from filing a timely lawsuit.  *Johnson v. Henderson*, 314 F.3d 409, 414
18 (9th Cir. 2002).

19       A party asserting estoppel against the federal government bears additional burdens.  First,
20 estoppel against the government must rest on "affirmative misconduct going beyond mere negligence,"
21 *Mukherjee v.* INS, 739 F.2d 1006, 1008 (9th Cir. 1986), and estoppel will apply only where the
22 government's wrongful act will cause a serious injustice and the public's interest will not suffer undue
23 damage by imposition of the liability.  *United States v. Bell*, 602 F.3d 1074, 1082 (9th Cir. 2010)
24 (internal punctuation omitted); *accord Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467
25 U.S. 51, 60, 104 S. Ct. 2218 (1984); *Watkins v. U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc).
26 The Ninth Circuit has defined "affirmative misconduct" as "a deliberate lie or a pattern of false
27 promises.  Negligently providing misinformation . . . does not meet this definition."  *Socop-Gonzalez,*
28 272 F.3d at 1184 (citation and internal quotation marks omitted).

MSBEC argues that the agency misled it into believing that its document request had been elevated to the Solicitor's office and was still under active consideration and that it could elect to defer any judicial action until the issue was resolved. That conduct was not a deliberate lie or pattern of misconduct. Moreover, as noted above, the agency informed MSBEC that it could bring a FOIA claim immediately. Thus, MSBEC has not demonstrated any affirmative misconduct by defendants that goes beyond mere negligence or even amounts to negligence. Therefore, the Court finds equitable estoppel does not apply.[7]

**CONCLUSION**

For the foregoing reasons, the Court hereby grants judgment on the pleadings in favor of all defendants on the First, Second, Third, and Fourth Causes of Action in the First Amended Complaint, and grants summary judgment in favor of the Department of the Interior and BLM on the Fifth Cause of Action.

The Clerk of Court is directed to enter final judgment in accordance with this order.

IT IS SO ORDERED.

DATED: July 29, 2013

                                                  /s/ John A. Mendez
                                                  HON. JOHN A MENDEZ
                                                  U. S. DISTRICT COURT JUDGE

---

[7] Because equitable tolling and equitable estoppel are inapplicable on the facts of this case, it is unnecessary to consider whether the doctrines are categorically inapplicable under 28 U.S.C. § 2401(a). *See Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009); *Marley v. United States*, 567 F.3d 1030, 1036 n.3 (9th Cir. 2009).